Court. The Honorable. The Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court, will now draw near and they will be heard. God save the United States of this Honorable Court. Good afternoon everyone. We are assembled in this virtual forum to proceed with oral argument in the called case and counsel is prepared and ready. So Mr. Magid, if you would please proceed. Yes, Your Honor. Thank you. So may it please the court, I'll start out with a quote actually from Respondent's own brief and that's the law is clear that courts do not exist to second-guess university disciplinary decisions. Instead, a court's role is to ensure that the result, right or wrong, stems from a fundamentally fair process. Put otherwise, by defendant's own standard, the complaint in this matter would be properly dismissed if the court believes that reading it in its entirety and assuming all facts as true, the complaint describes a fair process. It's inconceivable that that reading can occur. The complaint itself sets forth numerous facts that call into question the integrity of this process. And it does so with specificity. Repeatedly, I guess throughout the briefs, we'll see technical arguments. So at the high level, this case is about whether or not a fundamentally fair process occurred. And where we're at in this stage of litigation, the arguments before the court are that are technical in nature. Counsel, Judge Donovan dismissed with very specific reasons for each of the claims. I think it would be of assistance to us if you would address the bases that the court used to dismiss the complaint and demonstrate to us why that was erroneous. Yes, absolutely, Your Honor. So, you know, one of the critical elements that keeps coming back is the claim actually fails to state that the victims were discriminated upon on the basis of sex. And I think that that reading disregards several critical, or at least I'd like to highlight several critical paragraphs within the complaint that I think address specifically these issues. And one of them, I mean, if you, paragraph six, for example, states that university investigators were inherently suspicious of the males on the football team and excuse me, excuse me, sorry about this. Oh, excuse me, and that the football players in an email, right, had a increased propensity for sexual assault. And, you know, so that right there is a fact that's pled. It has sufficient grounds around it. It is, this isn't a cursory assertion. The background is laid out before. We move on and, you know, it even talks, the complaint talks about motivation to deflect criticism from previous claims of sexual harassment. Again, pointing to a basis of sex in driving the purpose and the outcome of the investigation. Counsel, the person who wrote that email, though, didn't participate in the subsequent adjudication of the matter, did she? She did not. She did not, but what I would highlight there is a prevailing attitude, right? So the complaint, my job in the complaint, right, is to set forth facts that lay a plausible ground that these, that discrimination occurred, and this is one fact within a greater context of many which sets forth that plausible basis. We can't, you know, allege the specific facts at this stage in the litigation which proved definitively, but what we can do is set forth a sufficient basis to say, hey, there's a real, there's a real reason that this litigation should progress. And it's not just based on an allegation without basis. There are very real facts surrounding the investigation and what occurred within to merit further investigation for, you know, further dialogue on the subject. Discovery. You know, many of the arguments that the, that the court addressed are fundamentally factual arguments. They're the facts of the case and, and there's factual assumptions within them. Granted, it's couched in a legal, in a legal argument, but it requires a in, in its, in its very basis. So what's the causal connection between this email and some adverse event? The email was, as pled in the complaint, the email was written by the direct supervisor of the investigator showing that at least within that department or the EOC department, there was a prevailing attitude of questioning whether or not specifically male, and we do put in the, in the complaint, male football players had an increased propensity for sexual violence. And our argument, I guess, would be that, you know, the, again, the court isn't here to, to assess the, the, the overall, or the second guess, I guess, the university decision. But, but certainly is here to assure that the, the, the fair process that occurred. And if that's a starting basis for the investigation, the starting basis is that, you know, they're likely to do something. Well, that, you know, that, that fails in the, in the basic premise of what should be fair and in an impartial process. From the, from the outset, I guess, and highlighting this fact, I would argue that from the outset that this was, that there was, was biased against the young men in this who were the subject of this investigation. Mr. Majid, had there been any known prior allegations of sexual assault by male football players at Minnesota? There were. You know, there were. I think there was one incident that I'm aware of. There, there was an incident and ultimately those, those charges were unsubstantiated as best I understand. And our argument would be that, that, and I believe it's detailed in the complaint, I should say, that the end result of many different investigations within the Athletic Department led to some oversight by, I believe it was the Department of Justice, that, that again created a motivating factor to show, or for the administration to show, that they were tough on investigating sexual assault. Again, a fact. Why is, and we seem to have language in our cases that say a focus on protecting victims of sexual assault who may be female is, is not indicative of animus, gender animus against males. Absolutely, and let me just, sorry. Okay, yes, and this kind of goes back to this argument, which we saw actually in, in Rasanda's brief, which is the argument that discriminate, any discrimination that occurred is discrimination against somebody who is accused, versus discrimination on the basis of, of, of sex, right? And I think that argument ultimately fails, because it is, it, it isn't sufficient to argue that because somebody is the target of an investigation, they can also not be a victim of sexual harassment, or that that investigation can't be targeted to that individual, because somebody holds a bias, and is therefore using the tools available to them to direct something, specifically an investigation, against, against an individual, an accused. So to answer your question, the fact set forth in the complaint, don't just allege that because these individuals were the target of an investigation, terrible things happened to them. That, the allegation is that anybody who is impartial looking at this, would have to take into account things such as the victim pleading the Fifth, Fifth Amendment, the fact that a video existed of the incident, the fact that, that, that the... Counsel, this is, this is, Counsel, this is Judge Loken. This sounds like a wonderful argument to the Minnesota Court of Appeals under, on review of the, what, what Title IX theory, or theories, are you urging us, or is this a due process argument? This is a, this is a Title IX argument, and the, it, it's in this court, it's properly within the federal court system because it's an underlying violation of federal civil rights, and you know, I posit to you that the complaint itself alleges that it's an underlying violation of civil rights, specifically sex discrimination, through very specific facts, which are pled. And because it's a violation of federal civil rights, it's properly... But there's a heavy, there's a heavy amount of precedent out there that a university disciplinary proceeding is not inherently or, if ever, a Title IX violation, and then there are many circuits, other circuits, who have adopted a precedent, and it might be, and everybody, the district court, everybody points out that we've never spoken to that, and here you are arguing without getting us to address one of the most important open issues in this circuit. Specifically whether or not, specifically what the standards should be in this circuit for when the federal court steps in and looks into the the university disciplinary process. For example, are you arguing that the district court should do de novo review of the disciplinary proceeding, and if they disagree with the result, the bottom line is that's a Title IX violation. No, your honor. No, I would argue that again, that the the federal court isn't there to second-guess the decision. What they are there to do is to examine whether or not our complaint, in particular, holding our feet to the fire, whether or not our complaint alleges a sufficient facts to bring forth a claim of that the investigation was biased from or by discrimination upon the basis of sex. Mr. Manchin, you only have a couple minutes left of your time. You can continue if you like, or you can reserve the remainder for a rebuttal. I think if possible, I'd like to reserve the remainder. Thank you. Ms. Ryan-Gallia? Yes, thank you, your honor, and may it please the court. In 2016, a university student reported that she had been sexually assaulted by up to a dozen students on the football team, while several others stood by, lined up, and cheered. As alleged in the complaint, the university responded to this report exactly as it should have and as it was obligated to do under federal law. It followed the process it follows in any student sexual misconduct matter. First, the university's Office of Equal Opportunity and Affirmative Action investigated. It interviewed 29 people and reviewed documents, text messages, and videos. EOAA identified 12 students as potentially involved in the alleged assault. Following its investigation, EOAA issued an 80-page report which found that two of those 12, including appellant John Doe 6, had not violated the student conduct code. The 10 students found to have violated the code, 9 of the 10 appellants in this case, requested a hearing. At the two-day hearing, they were represented by attorneys who cross-examined their accuser. They testified on their own behalves, they called witnesses, and they presented evidence. The hearing panel found that four of these students had not violated the student conduct code. For the six found responsible, the panel issued sanctions tailored to the severity of the wrongdoing. Of these six, three appealed to the university's provost who overturned the finding as to one of them. Not one sought review with the Minnesota Court of Appeals. This thoughtful, individualized decision-making process belies the very claims the appellants assert. These disciplinary decisions were based not on race, not on sex, but on the evidence presented at each stage of the process. To infer otherwise from the complaint would be unreasonable, and therefore the university, President Kaler, and Tina Marisam, respectfully asked this court to affirm. In his argument, Mr. Magid addressed the appellant's Title IX sex discrimination claim, and this court has made clear that for a plaintiff to state a claim, that a Title IX claim in the context of a disciplinary decision, that plaintiff must allege that he was disciplined because of his race. The appellants point to a specific email as their evidence that they were discriminated against on the basis of sex. I'm sorry, I said race. I mean sex for Title IX purposes. And they characterize this email as asserting that male football players had an increased propensity for sexual assault. But a reading of the complaint shows that that's a mischaracterization of the email. At paragraph 33 of the complaint, it's detailed that a year before the alleged assault that underlies this case, there was a group sexual misconduct matter involving several players on the football team. EOAA investigated that allegation as it was obligated to under federal law, and found that one student had violated the student conduct code in connection with that event, and that other students had violated the student conduct code by obfuscating and falsifying information. That's alleged in the complaint. Following that incident, the director of the Office of Equal Opportunity and Affirmative Action, and you can see this in paragraph 34 of the complaint, sent an email to the Athletics Department saying there was a concerning pattern of behavior by university football players. In other words, this email followed a specific event and was fulfilling the university's obligation under Title IX to provide an educational environment free of sexual harassment. EOAA was following up as it should have. Counsel, this is Judge Smith. Were there any other incidents other than the one mentioned? One typically doesn't produce a pattern. There are no other incidents alleged in the complaint. So, and if that's the document we're with at this point. So then why doesn't the email show at least some tendency to prejudge the situation against the male athletes? Because I think the email shows an effort on the part of EOAA to engage with the Athletics Department to address this concerning pattern. But there is no pattern. The email speaks for itself. It is not appended to the complaint, but it does detail more information than simply the one event. And certainly, I think that a group sexual harassment event involving multiple players on a football team within one calendar year of another event, that in itself could give rise to a concerning pattern. It doesn't mean that EOAA investigated with, you know, blinders on to find these students were responsible. In fact, the investigation found that two were not responsible and the university process at every stage made nuanced decision-making. If the university were on a mission to find that male student athletes were, had a, I think the phrase was increased propensity for sexual assault. I think that the conclusion of this disciplinary proceeding might look very different. But in fact, EOAA did not find that all of the all of the respondents were responsible for violating the Student Conduct Code. The Independent Student Sexual Misconduct Hearing Panel reached slightly different conclusions and found that several other players were not responsible for violating the Student Conduct Code. And then the provost found that one of the students who had been found responsible by the panel was not responsible for violating the Student Conduct Code. So the... Before that, wouldn't there, correct me if I don't have the facts because they get a little complicated in this case, but weren't the people who were involved in either creating or receiving that email involved at least in a preliminary decision to, I don't know if it was to suspend members of the team or something like that. So why wouldn't that at least be enough to state a plausible claim that there was bias against males and that it at least resulted in this suspension? I mean, I understand your argument maybe that it got cleaned up later on with the provost and others who weren't involved in that email. But what about just with respect to the suspension of the teammates? Well, I think there are a couple of different kinds of suspension that are alleged in the complaint and are often conflated in the complaint. Not one of the accused students was ever experienced a suspension of his studentship until after the disciplinary hearing process reached its ultimate conclusion. So until for the one, the ones who appealed to the provost, that suspension or expulsion was stayed until the very end of the disciplinary process. Not one student-athlete was suspended from the football team until after this investigation came out. And it was not the decision of the author of the email to take any action with respect to benching some of the student-athletes for a single postseason football game. The people who were implicated in the email were not involved in that decision and the complaint makes clear that that was, those were different decision makers. Counsel, it seems to me you are overlooking the the effect of destroying their NFL prospects as a protectable interest as well as their quote status as students. Are you rejecting the Seventh Circuit's analysis to the contrary? I don't know that it is alleged in the complaint that their NFL prospects were destroyed. It's alleged in the complaint that certain football players were not able to participate in a single football game. Well, they weren't helped. They weren't helped. But by the time they were, some were expelled, it had been accomplished. Now that's a, we're talking, we're getting into due process protectable liberty interest, but it seems to me it overlaps the ninth, the ninth Title IX analysis. Um, I, I see that more clearly through the due process lens and I appreciate you raising that your honor because I think that no action was taken against these students without noticing an opportunity to be hurt, which is what is the university's obligation to provide under the due process clause and no student, the only action taken against a student prior to the full student sexual misconduct subcommittee hearing was the students were benched for a single football game. They were never removed from the team. They were never deprived of access to athletics facilities. Students are benched from football teams for reasons, a variety of reasons relating to violation of team rules and to the extent each benching raises a due process deprivation issue when no court has found that there is a constitutionally protected right to participate in a single postseason football game. I think that goes beyond what the university's due process obligations are and certainly implicates qualified immunity for President Kaler and Ms. Harris. Excuse me, let me ask you another, a different question. Will you distinguish the Shrake versus Arizona State University case for me? I'm not familiar, familiar with that case, your honor. The Ninth Circuit decision in July of this year? I'm not, I'm sorry. How about Doe versus Purdue University, distinguish that. I would be happy to submit a supplemental letter to the court, but I am not, I've read Doe versus Purdue University, but I'm not recalling it specifically at the moment, your honor. How about Doe's 7 through 10 with respect to their due process? As I understand it, it's pled that they weren't given any notice that there were allegations against them. So, at least initially, how were they given notice and therefore due process? So it is alleged in the complaint that Jane Doe had a spotty recognition of the events of the night when she made her report to police and to EOAA. So when EOAA investigated, it interviewed 29 different witnesses. At the end of the conclusion of that investigation, it found that it made a preliminary finding, it's just a report that goes to the Office for Community Standards, that Doe's 7 through 10, it was more likely than not that they had violated the Student Conduct Code by engaging in sexual harassment by being in the apartment where the assault happened. At that point, they received full notice of the charges against them. They had a full opportunity to be heard at a hearing where they were represented by counsel. So they also had the same opportunity through the interview process as does any individual who's interviewed by the Office of Equal Opportunity and Affirmative Action to be represented by counsel, to be represented by an advisor, and to have that person with them throughout. But where that notice is located in terms of the due process analysis comes before the hearing. So they had full notice of the allegations. I mean, they had an 80-page report. There's no question that they had a full notice of the allegations against them before they went to that hearing and had an opportunity to be fully heard. Wasn't there some preliminary discipline taken against them prior to that full hearing though? To the extent it can be characterized as discipline, the only discipline alleged in the complaint that was taken against them is that they were benched for the single postseason football game. There's also an allegation that the university restricted all of the student-athletes ability to register for classes and to obtain their transcripts. But there's no allegation that any one of them ever attempted to register for classes or obtain their transcripts. So I don't know that that can be a constitutionally protected deprivation. So the appellants also alleged that they were retaliated against in violation of Title IX when they requested a hearing and the the appellees are unaware of any authority for the proposition that requesting a hearing constitutes protected conduct under Title IX for retaliation purposes. The court in Jackson v. Birmingham v. Board of Education, I'm sorry, characterized that protection as retaliation against individuals because they complain of sex discrimination and requesting a hearing that is provided under the due process protections of the university process does not constitute protected conduct for the purposes of a retaliation cause of action. And in addition, the appellants Title VI race discrimination claim and equal protection clause claim fail because they have failed to allege any similarly situated persons who were treated more favorably than they were and finally, the appellants have not alleged that the university consented to be sued in this court for state law claims and thus waiving its sovereign immunity. So ultimately, unless your honors have any further questions for me, it looks like my time's about up and I'd like to wrap up. All right, thank you counsel. Mr. Magic, your rebuttal. Your mic's muted. Sorry, thank you. One thing that I really want to highlight in this process is that there is no dispute here and there's no allegation in the complaint that the university doesn't have robust policies and procedures. So at a high-level view, it looks as if the university has a very robust process in place and there's no question to that. But what's alleged in the complaint is not a lack of process and not a excuse me, a lack of procedures, but it is a lack of integrity in the execution of those procedures. For example, there's an 80-page report. So by any description, a very detailed report of what happened or what is alleged to have happened. But this report systematically, it never mentions an 80-page report and it never mentions that the victim pled the fifth and recounted everything. I mean, how do we have an 80-page report sitting here and it never mentions this fact? That alone and those allegations alone in the complaint should be a sufficient basis to call into question the investigation which occurred. Beyond that, I mean there are... Counsel, as Judge Loken pointed out earlier, wouldn't that have been an appropriate appeal to the Minnesota State Court? No, because the surrounding allegations show that it wasn't just an erroneous outcome. It wasn't just that. The motivation behind what happened was based in a violation of civil rights. Sorry, federal civil rights. Specifically, sex discrimination. So Other than the email that you've mentioned previously, what other allegation in the complaint, what other factual allegation is there of gender animus by the university against males? Yes, absolutely. So I understand that the both the Minnesota District Courts as well as the I believe the 8th Circuit has said the allegation of like the dear colleague letter produced by the previous administration is not, that alone is not a sufficient basis to show gender bias, but that letter in the context of also the email, in the context of also an 80-page report which systematically excludes any mention of any fact that would be exculpatory, in combination with the fact that the alleged victim in this is admitted to sexual interactions with somebody that was underage and that went uninvestigated, unmentioned, altogether. All of that together shows that there was a very real, there's a very, there's a factual basis to allege that there was sexual discrimination here. And you know, finally, I guess another point worth mentioning, is the timer at zero? Yes. Oh, I apologize. So I should, yeah, sorry. All right. Thank you, counsel. Court appreciates both counsel for providing argument to the court today on the briefing that you've submitted. We will take the case under advisement, render decision in due course. Thank you. You may both be excused. Thank you very much. Thank you. All right. Judges, I'll send you a invite in just a few moments. It's 2 o'clock.